**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EDWARD JEFFERY,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 26-CV-0711** |
| | : | |
| **GINA CLARK,** *et al.,* | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**COSTELLO, J.**                                                            **MAY 14, 2026**

*Pro Se* Plaintiff Edward Jeffery brings this civil action pursuant to 42 U.S.C. § 1983

against three Pennsylvania Department of Corrections supervisors based on the conditions of his

confinement and the medical care he received while housed at two state prisons.  He also seeks

leave to proceed *in forma pauperis* and the appointment of counsel.  For the following reasons,

the Court will grant Jeffery leave to proceed *in forma pauperis*, deny the request for counsel as

premature, and dismiss his Complaint with leave to amend.

## I.      FACTUAL ALLEGATIONS[1]

On February 25, 2024, around 6 a.m., Jeffery was asleep on the top bunk in his cell at

SCI Chester when officers announced morning count on his cell block.  (Compl. at 4.)  Jeffery

rolled over and fell off the top bunk, which did not have a protective railing, injuring his hand.[2]

---

[1] The facts set forth in this Memorandum are taken from Jeffery's Complaint and the attached exhibits (ECF No. 1).  The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system.  Where the Court quotes from the Complaint, punctuation, spelling, and capitalization errors may be cleaned up as needed.

[2] Jeffery asserts that at some unspecified time prior to the incident, he requested a bottom bunk assignment due to his prior back surgery and participation in the prison's Suboxone medical program, but his request was denied.  (Compl. at 8.)

(*Id.*)  Jeffery told Officer Brown, who was conducting count on his block that morning, about the incident and he was sent to the medical ward.  (*Id.*)  A nurse visually inspected Jeffery's hand, told him, "there seem[s] to be nothing broken and the X-ray machine is broken" and put his arm in a sling.  (*Id.* at 4, 14.)   About six hours later, Jeffery's hand became swollen and he felt "unbearable" pain.  (*Id.* at 4.)  He returned to the medical ward and was sent to a hospital in Chester, Pa., where he received an x-ray revealing that his wrist[3] was broken.  (*Id.* at 4, 8.)  The doctor at the hospital recommended Jeffery be seen by an orthopedic specialist and he was scheduled for an appointment on February 27, 2024.  (*Id.* at 8.)  On that date, Jeffery was transferred to SCI Mahanoy while wearing tight handcuffs for 2.5 hours, causing him intense pain.[4]  (*Id.*)  When he arrived at SCI Mahanoy, Jeffery submitted a medical request slip and was eventually sent to the hospital for surgery.  (*Id.*)  He subsequently underwent surgery including implantation of two plates and four screws.[5]  (*Id.* at 8, 14.)  He contends that as a result of the incident, he is no longer able to make full use of his injured hand.  (*Id.* at 10.)

Based on these factual allegations, Jeffery asserts constitutional claims under the Eighth and Fourteenth Amendments, and appears to assert a negligence claim under state law.  (*Id.* at 5.)

---

[3] Jeffery states that his hand was broken, (Compl. at 4, 5), but the attached exhibits suggest it was his wrist or forearm, (*see id*. at 14) (noting that Jeffery was diagnosed with a "comminuted fracture of the radius").

[4] It is not clear from the Complaint whether Jeffery was taken to see an orthopedic specialist that day.

[5] There is some discrepancy in the Complaint as to when the surgery occurred.  Jeffery states that he underwent surgery "26 days after the injury."  (Compl. at 8.)  Meanwhile, prison officials stated, in response to Jeffery's grievance, that the surgery took place on March 8, 2024, or twelve days after his injury.  (*Id*. at 14.)

He seeks a declaratory judgment that the Defendants violated his rights,[6] monetary damages, a jury trial, and costs of suit. (*Id.*)

## II.    STANDARD OF REVIEW

The Court will grant Jeffery leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[7] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 560 U.S. 544, 556 (2007)). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds*

---

[6] Declaratory relief is unavailable to adjudicate past conduct, so Jeffery's request for this declaratory relief is improper. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."). A declaratory judgment is also not "meant simply to proclaim that one party is liable to another." *Corliss*, 200 F. App'x at 84 (*per curiam*); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").

[7] Because Jeffery is incarcerated, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

*recognized by Fisher v. Hollingsworth*, 115 F.4th 197, 204 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

Because Jeffery is proceeding *pro se*, the Court construes his allegations liberally.  *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  The Court will "apply the relevant legal principle even when the complaint has failed to name it."  *Id.* (quoting *Mala*, 704 F.3d at 245).  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim."  *Id.* (quoting *Mala*, 704 F.3d at 245).  An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants."  *Mala*, 704 F.3d at 245; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) (*per curiam*) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

Furthermore, the Court must dismiss the Complaint if it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *see also Grp. Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*").  A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction.  *See Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence.") (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)).

4

"Jurisdictional [issues] . . . may be raised at any time and courts have a duty to consider them *sua sponte*." *Wilkins v. United States*, 598 U.S. 152, 157 (2023) (internal quotations omitted).

## III.   DISCUSSION

### A.   Federal Claims

The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Groman v. Township of Manalapan*, 47 F .3d 628, 638 (3d Cir. 1995) ("The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law.").

"A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Jutrowski v. Township of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct." (quoting *Iqbal*, 556 U.S. at 677)); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).  *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

Jeffery names as Defendants three high-level supervisors at SCI Chester: Superintendent Gina Clark, Assistant Deputy Superintendent Keith Miller, and the unnamed Administrator of

the SCI Chester Health Department. (Compl. at 2-3.)  Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.'  However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005))).  Also, liability under § 1983 cannot be predicated on a *respondeat superior* basis. *Chavarriaga v. New Jersey Dept. of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015); *Robinson v. Delbalso*, No. 22-2378, 2022 WL 17248100, at *2 (3d. Cir. Nov. 28, 2022) (*per curiam*).

Rather, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017).  There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015).  First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)).  "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Chavarriaga*, 806 F.3d at 227.

6

The first type of liability includes a failure to supervise, however, a plaintiff asserting such a claim must "identify a supervisory policy or practice that the supervisor failed to employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure." *Barkes*, 766 F.3d at 317; *see also Chavarriaga*, 806 F.3d at 227.  A supervisory claim requires "a showing that there was an actual constitutional violation at the hands of subordinates" before finding liability on the part of the supervisor prison official.  *Allen v. Eckard*, 804 F. App'x 123, 127 (3d Cir. 2020) (*per curiam*) (concluding that failure to train and supervise claims asserted against supervisor defendants were meritless where the plaintiff failed to make a plausible showing of an underlying constitutional violation).

To set forth a claim for supervisory liability under the policy-and-practice strand of supervisory liability, a plaintiff must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

*Chavarriaga*, 806 F.3d at 227 (quoting *Brown v. Muhlenberg Township*, 269 F.3d 205, 216 (3d Cir. 2001)).  "Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury." *Id.*

Jeffery does not allege a basis for liability against any of the three Defendants.  Under a section of the Complaint titled "Responsibility of Defendants" he states that Clark "is the Superintendent at Chester Correctional Institution, Pa.  She is legally responsible for the operations of the prison and for the welfare of all the inmates at Chester Correctional Prison." (Compl. at 7.)  He states that Miller "held rank of Assistant Deputy Superintendent and was assigned to the S.C.I. at Chester in authorizing operations of the prison."  (*Id*.)  Meanwhile, he states that the unknown "Medical Health Administrator . . . is in charge of all the medical operations including making sure that the welfare of all inmates is provided prior to being subject to any and all health risk or accidents."  (*Id*.)  These Defendants are not otherwise discussed in the narrative of Jeffery's Complaint.  Jeffery thus appears to assert his claims against Clark, Miller, and the Medical Administrator based exclusively on their supervisory roles, rather than on their personal involvement in the violation of his rights.  As noted above, this is not a basis for a plausible constitutional claim.  *See Saisi*, 822 F. App'x at 48; *see also Chavarriaga*, 806 F.3d at 227.  The Court will therefore dismiss Jeffery's Complaint for failure to state a claim, but will grant him leave to amend in the event he can allege a plausible claim under the standards set forth above.

### B.      State Law Claims

The Court also understands Jeffery to allege a negligence claim under state law.  Because the Court has dismissed his federal claims, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims.  Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment." *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010). It is the plaintiff's burden to establish diversity of citizenship, *see Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount in controversy requirement has been met); *Jackson v. Rosen*, C.A. No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020).

Jeffery does not allege the citizenship of the parties. Rather, he provides only Pennsylvania addresses for himself and the Defendants, which suggests that he and some, if not all, of the Defendants may be Pennsylvania citizens. Accordingly, Jeffery has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claims he intends to pursue.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Jeffery leave to proceed *in forma pauperis* and dismiss his federal claims without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Jeffery's state law negligence claim will be dismissed without prejudice for lack of subject matter jurisdiction.  Jeffery may file an amended complaint in the event he can address the defects the Court has noted as to his claims.  An appropriate Order regarding amendment follows.  The Court will deny without prejudice as premature Jeffery's request for appointment of counsel.[8]

**BY THE COURT:**

_____
**MARY KAY COSTELLO, J.**

---

[8] Jeffery's request for the appointment of counsel (ECF No. 2) is premature at this stage of the litigation because his case has not yet passed statutory screening under 28 U.S.C. § 1915. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (before exercising discretion to appoint counsel "the district court must consider as a threshold matter the merits of the plaintiff's claim").  The Court will therefore deny Jeffery's request without prejudice.  He may renew his request after any amended complaint, if he files one, has been screened by the Court.  If Jeffery chooses to file a renewed motion, he should do so in accordance with the factors set forth by the United States Court of Appeals for the Third Circuit in *Tabron*.